**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GRANT HEILMAN PHOTOGRAPHY, INC.**<br><br>v.<br><br>**THE MCGRAW-HILL COMPANIES, et al.** | **CIVIL ACTION**<br><br>**NO. 12-2061** |

Baylson, J.                                                                                                    June 30, 2015

### MEMORANDUM RE POST-TRIAL MOTIONS

## I. Introduction

In this long-running copyright infringement dispute, Plaintiff Grant Heilman Photography, Inc. ("GHPI") alleges more than 2,300 claims of copyright infringement against Defendants McGraw-Hill Global Education Holdings, LLC and McGraw-Hill School Education Holdings, LLC ("McGraw-Hill"). GHPI, a stock photography agency, licensed photographs for use in McGraw-Hill's textbooks, educational materials, and other publications. GHPI contends McGraw-Hill committed copyright infringement on numerous occasions by overrunning limits in GHPI's licenses without compensating GHPI for the additional use of its photographs.

In September 2014, following a number of pretrial motions and discovery disputes, the Court held a six-day bellwether trial. Counsel for both parties selected 53 claims (out of the more than 2,300 claims brought by GHPI) to try to a jury in order to determine whether some of GHPI's claims were untimely, whether McGraw-Hill was liable for copyright infringement, and, if so, what damages should be awarded to GHPI.

On September 24, 2014, the jury returned a verdict in favor of GHPI on all 53 claims. The jury found that McGraw-Hill had not proven that GHPI was on inquiry notice of McGraw-Hill's infringements before April 18, 2009, and that GHPI discovered facts sufficient to file a

claim against McGraw-Hill only in October 2009.  See ECF 179.  This finding, under the Third Circuit's "discovery rule," rendered all of GHPI's claims at issue in the bellwether trial timely.[1]  See ECF 245; 2015 WL 1279502 (E.D. Pa. Mar. 20, 2015).  The jury awarded GHPI actual damages of $98,610 and profits of $28,477.  See ECF 179.  Accordingly, the Court entered judgment against McGraw-Hill in the amount of $127,087.  See ECF 180.

Following the entry of judgment in the bellwether trial, the parties filed numerous post-trial motions.  The Court has already denied one of those motions, McGraw-Hill's motion for judgment as a matter of law as to instances of infringement that occurred before April 18, 2009, or three years prior to the filing of the complaint in this case.  After carefully weighing the arguments of both sides, the Court concluded that there was a legally sufficient evidentiary basis for the jury's finding that McGraw-Hill had failed to establish that GHPI was on inquiry notice or aware of "storm warnings" of infringement before April 18, 2009.  See ECF 245, 246; 2015 WL 1279502.

The Court now turns its attention to three additional post-trial motions:

1. McGraw-Hill's October 21, 2014 motion under Federal Rule of Civil Procedure 59(e) for a constitutional reduction in the jury's actual damages award (ECF 194, 197).  GHPI responded to that motion on December 2, 2014 (ECF 210), and McGraw-Hill replied on December 22, 2014 (ECF 218).

2. GHPI's November 4, 2014 motion under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law on profits (ECF 198).  McGraw-Hill responded to that motion on December 2, 2014 (ECF 205), and GHPI replied on December 22, 2014 (ECF 220).

3. GHPI's November 4, 2014 motion for a permanent injunction and impoundment (ECF 199).  McGraw-Hill responded to that motion on December 2, 2014 (ECF 208), and GHPI replied on December 22, 2014 (ECF 222).

---

[1] Under the "discovery rule," the running of the statute of limitations is tolled until "the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."  See William A. Graham v. Haughey ("Graham I"), 568 F.3d 425, 438 (3d Cir. 2009).

The Court held oral argument on the damages issues on June 19, 2015, and advised the parties that once these motions were decided, the Court would expect counsel to make proposals for "translating" the verdict of the bellwether trial into further findings on damages and a final judgment which will allow the parties to appeal.

Bellwether trials, which are most frequently used in multi-district mass tort cases, are recognized as an effective means for a trial judge to enhance settlement prospects or resolve common issues or claims in complex litigations.  See, e.g., In re Chevron U.S.A., Inc., 109 F.3d 1016, 1019-20 (5th Cir. 1997) ("[T]he results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by jury verdicts. Common issues or even general liability may also be resolved in a bellwether context in appropriate cases."); In re Tylenol (Acetaminophen) Mktg., Sales Practices, and Prods. Liab. Litig., No. 12-7263, MDL No. 2436, 2015 WL 2417411, at *1 & n.3 (E.D. Pa. May 20, 2015) ( "A 'bellwether case' is a test case.  'Bellwether' trials should produce representative verdicts and settlements.").[2]

This Court has previously used a bellwether trial in a copyright case alleging that unknown defendants infringed a plaintiff's copyrights by using a peer-to-peer client sharing program to download plaintiff's motion pictures without paying royalties.  Malibu Media, LLC v. John Does 1-16, 902 F. Supp. 2d 690, 702 (E.D. Pa. 2012).  In that case, the Court permitted a bellwether trial to go forward against five defendants who had filed motions with the Court,

---

[2] The term "bellwether" is "derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock.  The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray, and so it is in the mass tort context.  Chevron, 109 F.3d at 1019.  For additional information about the uses and advantages of bellwether trials, see, e.g., Manual for Complex Litigation, Fourth § 22.315; Eldon E. Fallon, et al., Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323 (2008); Alexandra D. Lahav, Bellwether Trials, 76 Geo. Wash. L. Rev. 576 (2008).

while staying the cases against other defendants.  Id.  The bench trial resulted in admissions of liability by the three defendants who ultimately remained in the case and the award of damages to plaintiff.  Malibu Media, LLC v. John Does 1, 6, 13, 14, 950 F. Supp. 2d 779, 780 (E.D. Pa. 2013).  The analyses and results were useful for the disposition of similar cases.

In this case, following briefing and argument by the parties, the Court concluded a bellwether trial would be the most efficient approach for trying the massive number of claims at issue and concluded that, in the exercise of its "informed discretion" under Fed. R. Civ. P. 42(b), this approach would "expedite and economize" this action.  See ECF 35, 36.  The Court noted that if the jury found in favor of McGraw-Hill on the statute of limitations issue (which the jury ultimately did not), it would have "dramatically narrowed" the scope of the trial.  See ECF 35.

Inherent in the nature of a bellwether case is that consequences must flow from the jury's findings for the remaining claims in this case.  See Chevron, 109 F.3d at 1019 (noting that "[c]ommon issues or even general liability may also be resolved in a bellwether context in appropriate cases.").  This is especially the case here, when the bellwether trial involved a selection of generally similar claims between the same plaintiff and same defendants.

As the discussion below will show, the jurors' answers to interrogatories show clearly that:

1.	The jury found that GHPI proved McGraw-Hill infringed the copyright of GHPI's photographs by a preponderance of the evidence.

2.	McGraw-Hill failed to satisfy the jury that any of GHPI's claims were barred by the applicable statute of limitations.

3.	The jury found that GHPI proved a right to actual damages and profits.

As this was a bellwether trial, the jury's findings on the 53 claims litigated, including the jury's findings on damages, must have resonance on the thousands of remaining claims in this case.  With the Court's ruling on the two pending motions concerning the verdicts on damages,

4

the stage is set for the parties' final act—using the bellwether verdicts to extrapolate damages for the remaining claims.

## II. Overview of Damages under the Copyright Act

The Copyright Act authorizes three separate damages remedies for infringement. GHPI initially claimed statutory damages under 17 U.S.C. § 504(a), and alternatively proceeded under 17 U.S.C. § 504(b), which allows a copyright owner "to recover the actual damages suffered by him or her as a result of the infringement, and any profits that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).

(1)     Statutory Damages. During trial, the Court granted McGraw-Hill's motion for a directed verdict on statutory damages, concluding that the infringement began before GHPI registered its copyright and GHPI failed to register its copyright within three months of first publication. See ECF 233, Trial Tr. 3:11-6:7, Sept. 19, 2014; see also Gloster v. Relios, Inc., No. 02-7140, 2006 WL 1804572, at *1-2 (E.D. Pa. June 28, 2006).

(2)     Actual Damages. "Actual damages represent the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement." 5 Nimmer on Copyright § 14.02[A]. Plaintiff's actual damages are generally "equal to the profits that the plaintiff might have accrued but for the defendant's infringement," which is distinguishable from the related right to recover infringer's profits. Id. § 14.02[A][1]. However, "damages may be reduced if, prior to infringement, a license agreement has been executed by the plaintiff that in itself reduces the market value of the copyrighted work to the plaintiff as of the time of infringement." Id. § 14.02[A].

(3)     Infringer's Profits. With regard to establishing the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the

infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  17 U.S.C. § 504(b).  However, "a finding of liability is not a lottery ticket.  In all instances, the relief should match the proof."  5 Nimmer on Copyright § 14.01[C][1].

 Section 504(b) permits recovery of actual damages and infringer's profits "to the extent there is no overlap in those recoveries."  6 Patry on Copyright § 22:112.  It is clear that § 504(b) bars recovery of any infringer's profits that are included in the actual damages award, and vice versa.  Hamil Am., Inc. v. GFI, 193 F.3d 92, 108 n.7 (2d Cir. 1999) (holding that a copyright plaintiff "may recover its own lost profits, which are part of the plaintiff's 'actual damages,' as well as the defendant's profits," but "a plaintiff may not recover damages that have already been taken into account in computing its actual damages").

GHPI is a stock photography agency that earns revenue licensing its photographs for use in others' work, not a publisher who sells textbooks.  "Where plaintiff would not have made the sales defendant did, or where the parties' revenues represent compensation for different activities, there will be no double recovery."  6 Patry on Copyright § 22:112.   Thus, there are two separate revenue streams here:  (1) GHPI's lost revenues, i.e. fees not paid for McGraw-Hill's use of GHPI's photographs, and (2) McGraw-Hill's profits (or a portion of profits) earned from selling textbooks (which contained, among other things, GHPI's photographs).  Accordingly, the jury was justified in awarding actual damages and infringer's profits in this case.  But the jury's award is impermissible to the extent either the actual damages or infringer's profits award includes an element of the other.

### III. Factual Summary of Evidence at Trial

The Court notes that it has already summarized the procedural history of this case and some of the evidence introduced at trial in its Memorandum on McGraw-Hill's motion for judgment as a matter of law. See ECF 245; 2015 WL 1279502, at *2-*10. Accordingly, the Court will summarize only those facts introduced at trial necessary to a determination of the pending motions concerning actual damages, infringer's profits, and permanent injunction issues.

GHPI's proof of its alleged actual damages primarily relied on agreed upon licensing fees negotiated between the parties. GHPI's pretrial memorandum (ECF 159) defines its "actual damages" as "the actual license fees it is owed." GHPI states that Exhibit A to its pretrial memorandum is "a summary of claims for damages." Exhibit A was filed under seal (ECF 162) because McGraw-Hill had designated its contents confidential under a Protective Order. Exhibit A is a graph showing detailed data for all 53 invoices which were subjects of the bellwether trial, including a copy of each photograph used by McGraw-Hill, the name of the publication in which it appeared, license limit, print amount, actual use (if term exceeded), and damages sought by GHPI for which the heading is "Lost License Fees" plus [McGraw-Hill's] "Revenue." The information from the graph which constitutes Exhibit A to GHPI's pretrial memorandum was introduced at trial (Tr. Ex. P-810, P-824, P-825).

The evidence at trial also showed that on several occasions—though by no means on every occasion—McGraw-Hill agreed to pay a multiplier when it was found to have infringed GHPI's copyrighted photographs:

- McGraw-Hill paid two times the license fee for unauthorized use of GHPI photographs in the 1998 edition of Biology: Dynamics of Life. See ECF 229, Trial Tr. 216:3-12, Sept. 15, 2014.

- On August 15, 2006, Heidi Kidwell, an employee of Glencoe, a McGraw-Hill unit, sent a letter to GHPI enclosing a check for $39,433.10 for "usage in a print

run larger than originally anticipated" in 16 separate invoices involving 10 publications. See ECF 230, Trial Tr. 44:25-45:20, Sept. 16, 2015. In October 2006, GHPI President Sonia Wasco wrote a letter to Ms. Kidwell contending that McGraw-Hill owed additional amounts under the parties' pricing agreement for the 16 invoices that had been exceeded. Id. 56:21-57:6. McGraw-Hill agreed to pay the difference. Id. 62:24-63:12.

- In 2009, McGraw-Hill paid a "much higher" than usual license fee for use of a single image without a license in the fifth edition of The Living World. See id. 97:8-25; ECF 232, Trial Tr. 180:23-181:21, Sept. 18, 2014.

The evidence also showed that GHPI's invoices during certain time periods included provisions requiring payment of either two times or ten times the license fee in the event the photographs were used beyond license limits. See ECF 230, Trial Tr. 157:12-162:25, Sept. 16, 2014. Ms. Wasco testified that this license term was not a penalty but "a fair use charge, because it was something that was done in the industry" for license overruns. Id. 117:12-118:12. She noted that GHPI charged a ten times fee to some clients, but charged textbook publishers a lesser fee for unauthorized uses because they were typically able to work out agreements. Id. 161:13-162:25. Ms. Wasco testified that GHPI "charged multiples, it just wasn't a ten times multiple." Id. 162:24-25. She also testified that she viewed the ten times multiple GHPI charged McGraw-Hill with regard to the overruns that led to this litigation as the starting point for negotiations, not the actual amount GHPI expected McGraw-Hill to pay. See ECF 234, Trial Tr. 68:25-69:23, Sep. 22, 2014.

The record also includes testimony from Rachel Norton, Director of Publishing Operations at McGraw-Hill School Group, that McGraw-Hill paid another stock photography agency more than $800,000 for unauthorized use of images. See ECF 231, Trial Tr. 37:6-38:13, Sept. 17, 2014. Ms. Norton testified that she did not know precisely how the calculations were done, but that the $800,000 payment seemed to be more than just the difference between the usage tiers in McGraw-Hill's pricing agreement with that agency. Id. Moreover, Ms. Norton

testified that McGraw-Hill pays a "wide range" of license fees to vendors.  See ECF 232, Trial Tr. 70:13-17, Sept. 18, 2014.

During GHPI's closing argument, GHPI's counsel asked the jury to return a verdict substantial enough to "get [McGraw-Hill's] attention."  See ECF 234, Trial Tr. 106:12-15, Sept. 22, 2014.  "I'm asking that you award damages in the amount surely of the lost fees, but also in some profits sufficient to wake them up and to stop this infringement."  Id.  106:15-18.  In its rebuttal argument, GHPI again asked the jury to send a message to McGraw-Hill:

> You can make McGraw pay—the only thing that matters to them, and that is money.  You know, it has been said that this is a bellwether case.  Well, as surely as the bell—the old Liberty Bell sits across the street from the courthouse, we ask you to ring the bells of justice so loudly that they can be heard all the way up to New York City and do the right thing, because if you don't put an end to McGraw's infringing behavior, who will?  Who will?

> Id. 151:124-152:7.

The Court instructed the jury on actual damages and lost profits consistent with § 504(b).  The Court provided the following instruction on actual damages:

> Basically, the law allows the successful plaintiff to recover the actual damages suffered by Plaintiff as a result of the infringement, including unrecovered costs and lost profits.  And also, any profits of Defendants attributable to the infringement that you have not already taken into account or properly covered in figuring Plaintiff's lost profits.

> The copyright owner is entitled to recover the actual damages suffered as a result of the infringement.  Actual damages means the amount of money adequate to compensate the copyright owner for the fair market value of defendant's infringing use.

> Plaintiff's actual damages here may include its failure to obtain the market value of the fee the owner was entitled to charge for such use.  Thus, a copyright plaintiff may recover the value of the license fee the defendant would have paid him for the use of the work.

> In determining what a reasonable fee would be, you can consider the testimony from the parties, past license fees for similar uses, other license fees for these

photographs, and other contracts between the parties identifying how much a license would cost.

Id. 174:2-23.

Following closing arguments, McGraw-Hill moved to add a jury instruction that "there is no punitive component to actual damages and profits. GHPI's counsel made a plea for deterrence and punishment, and that is not the law." Id. 153:19-23. The Court refused to give the instruction because the Court had adequately charged on the measure of damages. Id. 153:24-25.

With the exception of McGraw-Hill's request for an exception as to actual damages, neither party excepted from the jury charge.

## IV. Actual Damages

### A. Introduction

McGraw-Hill has moved under Fed. R. Civ. P. 59(e) for a constitutional reduction in the jury's actual damages award to GHPI from $98,610 to $16,435. McGraw-Hill contends the jury's actual damages award is constitutionally excessive because it incorporates an impermissible six-times penalty and should be reduced to GHPI's lost licensing fees without any multiplier. GHPI disputes the proper standard to be used in evaluating McGraw-Hill's motion and whether McGraw-Hill is entitled to a reduction in the actual damages award.

The jury's actual damages award will be reduced as a matter of law. Although there is no United States Supreme Court or Third Circuit precedent on this issue, the majority of courts to have considered the issue have concluded that "actual damages" under the Copyright Act, 17 U.S.C. § 504(b), are limited to the fair market value of a license defendant would have obtained pre-infringement for use of the copyrighted work. See, e.g., Davis v. The Gap, Inc., 246 F.3d 152, 172 (2d Cir. 2001) (holding a copyright owner could recover actual damages under § 504(b)

including "the fair market value of a license covering the defendant's infringing use"). However, "actual damages" do not include multipliers for unauthorized use, which courts have deemed impermissible penalties akin to punitive damages, which are not recoverable under § 504(b) of the Copyright Act. See, e.g., Faulkner v. Nat'l Geographic Soc., 576 F. Supp. 2d 609, 617 (S.D.N.Y. 2008) (rejecting the incorporation of a multiplier into "actual damages" and noting that every case to consider the question has rejected such multipliers); Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc., 335 F. Supp. 2d 466, 469 (S.D.N.Y. 2004) ("The value of what was illegally taken is not determined by multiplying it." (internal quotation marks omitted)). Accordingly, McGraw-Hill's motion will be granted in part.

**B. Legal Standards for Evaluating McGraw-Hill's Motion**

Rule 59(e) permits a party to move to alter or amend a judgment within 28 days of entry of that judgment. Fed. R. Civ. P. 59(e). A court is permitted to alter or amend a judgment because of (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error of law or prevent manifest injustice. North River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995).

The general rule is that a court is to uphold an award of damages "if there is a reasonable basis to do so." Zielinski v. SPS Tech. LLC, No. 10-3106, 2011 WL 5902214, at *2 (Nov. 22, 2011) (quoting Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir. 1989)). A court must not vacate or reduce a damages award merely because it would have granted a lesser amount of damages. Id. (citing Motter, 883 F.2d at 1230)). The Court views the facts in the light most favorable to the verdict winner. See Cortez v. Trans Union, LLC, 617 F.3d 688, 718 (3d Cir. 2010).

The first issue is the proper standard the Court should use in evaluating McGraw-Hill's motion. The parties dispute whether the motion should be considered under a constitutional Due Process analysis or a remittitur analysis. McGraw-Hill has not asked the Court to remit the jury's actual damages award. Rather, McGraw-Hill contends that the award is constitutionally excessive because it includes a punitive element—a six-times multiplier—that is impermissible under the Copyright Act. As a result, McGraw-Hill argues the Court must, as a matter of law, reduce the jury's actual damages award.

In response, GHPI argues that McGraw-Hill is seeking to apply standards governing punitive damages to compensatory damages. Furthermore, if the jury award is not supported by the evidence—a contention GHPI disputes—then the Court should in GHPI's view remit the award consistent with principles of constitutional avoidance. See Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 508 (1st Cir. 2011) (holding a district court erred under principles of constitutional avoidance in reducing a permissible statutory damages award as grossly excessive without considering remittitur). Remittitur would require the Court to offer GHPI the option of electing to accept a lower damages award or a new trial.

The Supreme Court has considered constitutional standards on damages awards in the punitive damages context and has held that the Due Process Clause of the Fourteenth Amendment prohibits "grossly excessive or arbitrary punishments." See State Farm Mut. Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003). Compensatory damages, however, "are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrong conduct." Id. The Third Circuit has noted that a jury's compensatory damages award "will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award." Cortez, 617 F.3d at 718. But the Third Circuit has used the same test

for evaluating the constitutionality of compensatory damages awards that the Supreme Court has used in punitive damages awards—a compensatory damages award will be upheld unless the verdict is "so grossly excessive as to shock the judicial conscience." Id. If the Court determines that a damages award is constitutionally excessive, it must reduce the award as a matter of law to an amount that conforms with due process. Zielinski, 2011 WL at 5902214, at *2 (citing Cortez, 617 F.3d at 716).

The Third Circuit has distinguished between such a constitutional reduction of damages and remittitur. Cortez, 617 F.3d at 716. The former is a mandatory reduction that occurs as a matter of law to avoid a denial of due process. Id. Such a reduction does not interfere with a plaintiff's Seventh Amendment right to have juries make findings of fact, so the plaintiff need not be offered the option of a new trial. Id. By contrast, remittitur is a discretionary reduction in damages by the court when the court believes that the evidence does not support the jury's damages award. Id. The court in effect substitutes its judgment for that of the jury, and, as a result, must offer the plaintiff the option of a new trial to comport with the Seventh Amendment. Id.

The constitutional standard applies here because it better fits the determination McGraw-Hill requests that the Court make. Although the actual damages award is not "grossly excessive" as that term is literally understood, McGraw-Hill contends that the damages award is constitutionally excessive because it includes an impermissible six-time multiplier in violation of the Copyright Act. McGraw-Hill is asking the Court to decide, as a matter of law, that the actual damages award includes elements that cannot be lawfully included. See 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2815 (3d ed. 1998); cf. Bereda v. Pickering Creek Indus. Park, Inc., 865 F.2d 49, 55 (3d Cir. 1989) (remanding for new trial on damages

because "[t]his is not a case where it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there").  That element could be the inclusion of an impermissible multiplier or the inclusion of infringer's profits in the actual damages award, leading to forbidden double counting of GHPI's recovery.  McGraw-Hill does not seek to have the Court make a discretionary determination that the actual damages award should be reduced as inconsistent with the evidence.  Cf. William A. Graham Co. v. Haughey ("Graham II"), 646 F.3d 138, 142 (3d Cir. 2011) (affirming denial of remittitur in a case not involving allegations that the damages contained an impermissible component as a matter of law because the evidence was sufficient to support the damages award).

Because the constitutional standard applies here, the Court will not offer GHPI the option of electing a new trial instead of accepting a lower damages amount as would be required if the Court granted remittitur.

## C.    McGraw-Hill's Request for a Constitutional Reduction of Damages

McGraw-Hill contends the jury's actual damages award must be reduced as a matter of law from $98,610 to $16,435 to reflect the amount of damages GHPI proved at trial without including the six-times multiplier awarded by the jury.  McGraw-Hill argues this multiplier reflects an impermissible six-times penalty and was awarded after GHPI's counsel expressly asked the jury to punish McGraw-Hill during closing argument.  The Court also observes that GHPI's counsel invited the jury to award infringer's profits as part of the actual damages award in his closing argument.[3]  GHPI argues the jury's award was supported by the evidence and was

---

[3] The argument that GHPI counsel's closing invited the jury to award punitive damages is far less persuasive than McGraw-Hill's contention that a multiplier is impermissible in an actual damages award under the Copyright Act and the Court's observation that GHPI's counsel invited the jury to award infringer's profits as part of the actual damages award, leading to impermissible duplication.

not an impermissible penalty. GHPI contends the licenses it granted to McGraw-Hill provided for multipliers that are not penalties but reflect customary market prices for use of copyrighted photographs without authorization.

### 1. Legal Framework

Federal copyright law permits a copyright owner to recover actual damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). As the Court charged the jury, actual damages reflect "the amount of money adequate to compensate the copyright owner for the fair market value of defendant's infringing use" and are separate from the infringer's profits. See ECF 234, Trial Tr. 174:2-23, Sept. 22, 2014.

There does not appear to be any relevant Third Circuit precedent on the question of actual damages. However, the Second Circuit thoroughly considered the meaning of actual damages in Davis v. The Gap, Inc., 246 F.3d 152 (2d Cir. 2001). In that case, the Second Circuit vacated the district court's grant of summary judgment in favor of defendant, holding that plaintiff's claims for actual damages under § 504(b) were not too speculative. Davis, 246 F.3d at 156. Plaintiff sought, among other remedies, $2.5 million in unpaid licensing fees. Id. The court noted that "actual damages" "should be broadly construed to favor victims of infringement." Id. at 164. However, the court cautioned that damages awards must not be based on "undue speculation" to avoid claims of unreasonable size, such as plaintiff's $2.5 million claim. Id. at 166. To prevent such claims, "[t]he question is not what the owner would have charged, but rather what is the fair market value" of the thing taken. Id. Accordingly, the Second Circuit held that § 504(b) "permits a copyright owner to recover actual damages, in appropriate circumstances, for the fair market value of a license covering the defendant's infringing use." Id. at 172. The fair market

value means "the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." Id. at 167.

This approach appears to demand that actual damages be determined from a pre-infringement perspective. Id.; see also Semerdjian v. McDougal Littell, 641 F. Supp. 2d 233, 239 (S.D.N.Y. 2009) ("Actual damages are to be determined from an *ex ante*, or pre-infringement, perspective."). This case differs from Davis and other cases considering actual damages, however, because the Court need not rely on the fair market value of a hypothetical license covering the infringing use. Instead, there is record evidence of the amounts GHPI charged McGraw-Hill for the licenses that McGraw-Hill overran. Accordingly, the key question here appears to be whether it was permissible for the jury to include a multiplier in its determination of the "fair market value" of the licenses covering McGraw-Hill's infringing use.

At least two cases to consider this issue pretrial have determined that such a multiplier is impermissible under § 504(b). In Faulkner v. National Geographic Society, 576 F. Supp. 2d 609 (S.D.N.Y. 2009), the court granted a motion in limine to exclude the testimony of plaintiffs' expert that a six-times multiplier would be appropriate in the industry to compensate plaintiffs for defendant's infringing use of photographs. The court determined that such a multiplier was purely punitive and impermissible as part of "actual damages" under § 504(b). Faulkner, 576 F. Supp. 2d at 617. The court noted that every case to consider the question had rejected such multipliers. Id. The court also rejected the argument that industry practice could trump Congressional intent to limit damages under § 504(b) to actual damages. Id.

In Stehrenberger v. R.J. Reynolds Tobacco Holdings, Inc., 335 F. Supp. 2d 466 (S.D.N.Y. 2004), a district court granted partial summary judgment to defendant on the question of whether plaintiff could claim a multiplier as part of her "actual damages." The court found

that "actual damages" under § 504(b) were compensatory in nature, but that such multipliers incorporated concepts of punishment and deterrence not authorized under the statute. Stehrenberger, 335 F. Supp. 2d at 468. The court noted that actual damages included "the fair market value of a license authorizing defendants' use of the copyrighted work," but that the "'value of what was illegally taken' is not determined by multiplying it." Id. at 468-69.

Commentators appear to agree that multipliers are impermissible. See 6 Patry on Copyright § 22:111 ("In no case can a multiplier of actual license fees be awarded as a form of punishment, whether based on industry custom or not."); 5 Nimmer on Copyright § 14.02 (noting that the cases have generally rejected damage multipliers).

However, a multiplier was awarded in a First Circuit case, Bruce v. Weekly Words News, Inc., 310 F.3d 25, 27 n.1 (1st Cir. 2002). The actual damages of $11,500 in that case included a five-times multiplier for unauthorized use. Id. However, the parties appear to have agreed on the multiplier as part of actual damages, and the court never considered whether such a multiplier was permissible under the Copyright Act.

### 2. Analysis

GHPI makes several arguments for maintaining the jury award. First, GHPI contends that the Court appropriately instructed the jury on actual damages, and the Court must assume the jury acted rationally and followed its instructions. See United States v. Zauber, 857 F.2d 137, 154 (3d Cir. 1988). The Court's jury instruction on actual damages, to which neither party excepted (other than McGraw-Hill's request for an additional instruction on punitive damages), was an accurate statement of law. Therefore, it is possible that the jury may have believed that the six-times multiplier reflected the fair market value of McGraw-Hill's infringing use. Alternatively, the jury may have believed that because the GHPI's licenses permitted two-times

17

and ten-times multipliers, a six-times multiplier reflected the average of what McGraw-Hill would have paid GHPI for use of the work, and the jury was giving effect to the license the parties had agreed to. However, if such a multiplier cannot be included in actual damages as a matter of law, the Court may be required to correct that error even if there are conceivable and rational reasons for jury's award.

Second, GHPI argues that the jury's verdict is supported by the evidence introduced at trial. This evidence included:

- Evidence that GHPI charged and McGraw-Hill willingly paid more than the normal license fee for unpermissioned uses on several occasions. See ECF 229, Trial Tr. 216:3-12, Sept. 15, 2014; ECF 230, Trial Tr. 44:25-25:20, 56:21-57:6, 64:24-63:12, 97:8-25, Sept. 16, 2014; ECF 232, Trial Tr. 180:23-181:21, Sept. 18, 2014.

- Testimony from Ms. Wasco that GHPI's invoices for certain periods included a term requiring payment of either a two-times or ten-times license fee for overuse, which she testified was not a penalty. See ECF 230, Trial Tr. 117:12-118:12, 157:12-162:25, Sept. 16, 2014.

- A wide range of fair market values paid by McGraw-Hill for licenses to use photographs in McGraw-Hill textbooks. See ECF 232, Trial Tr. 70:13-17, Sept. 18, 2014.

- Testimony by Ms. Norton that McGraw-Hill paid another agency more than $800,000 to compensate it for unauthorized use of its images. See ECF 231, Trial Tr. 37:6-38:13, Sept. 17, 2014.

This evidence would be more relevant if the Court was confronting a discretionary remittitur, but it is not persuasive in sustaining the use of a multiplier for all other invoices which remain to be analyzed in this case, as the trial was a bellwether.

Moreover, GHPI's pretrial position, as outlined in its pretrial memorandum, conflicts with the arguments it now advances regarding actual damages. Under Local Rule 16.1(c)(3), a party's pretrial memorandum "shall contain . . . [a] list of every item of monetary damages claimed . . . ." As noted, it is clear from GHPI's pretrial memorandum and Exhibit A that GHPI

sought as its "actual damages" nothing more than its "lost license fees." It also sought McGraw-Hill's profits from the sale of the books containing GHPI's photographs.

The Court concludes that GHPI's damages as stated in the pretrial memorandum and its Exhibit A were different from how GHPI sought damages at trial and, in particular, during GHPI's closing argument. GHPI's arguments were inconsistent with GHPI's pretrial memorandum and Exhibit A thereto. This issue was raised by defense counsel at trial in his exception to GHPI's closing argument (albeit without reference to the pretrial memorandum) and is an additional reason why McGraw-Hill's motion for a constitutional reduction has merit.

GHPI's strongest argument is that McGraw-Hill expressly agreed to pay a multiplier for unauthorized use and had paid such a multiplier in the past, so the jury should be entitled to hold McGraw-Hill to its bargain. In this regard, Faulkner and Stehrenberger are distinguishable because they did not involve licenses that expressly provided for multipliers. Instead, those cases rejected the argument that industry practice could trump Congress's decision to limit remedies in § 504(b).

The question remains, however, how the Court should treat the jury's verdict regarding those claims for which GHPI introduced evidence that McGraw-Hill paid a multiplier in excess of the actual license fee to take into account McGraw-Hill's failure to properly license its usage. Here, viewing the evidence in the light most favorable to GHPI, the license fee and multiplier actually paid by McGraw-Hill on several occasions could be viewed as reflecting the fair market value of those specific licenses at the time this infringement occurred. Unlike the cases rejecting such multipliers, which attempted to determine what a hypothetical license would be, GHPI has put on evidence of actual conduct by McGraw-Hill. Accordingly, the Court will permit the actual damages award to include the added amounts McGraw-Hill paid, in the amount the

evidence shows McGraw-Hill paid, as reflective of the pre-infringement fair market value of those specific licenses.

The Court cannot allow the multiplier for any invoices other than those presented at the bellwether trial, however. GHPI did not proceed on a claim of custom and usage and it did not present any legal instructions on this theory. Also, GHPI's pretrial memorandum did not claim "across the board" actual damages based on any multiplier.

The Court must also consider whether the license fee should include multipliers specified in the licenses but not actually paid. The precedents are not clear whether the parties should be permitted to contract around § 504(b)'s limitation in the context of a bellwether trial. Although Bruce indicates that a multiplier could be awarded if both sides agree to it, that case never considered whether such a multiplier was permissible under the Copyright Act (and here both sides do not agree). Permitting the parties to contract around the limitation on inclusion of multipliers in actual damages, however, runs counter to the Second Circuit's holding that the fair market value of a reasonable license fee should be determined from a pre-infringement perspective. See Davis, 246 F.3d at 167. It also requires the Court to engage in speculation about whether McGraw-Hill would have paid such a multiplier, when there is evidence that, on the occasions McGraw-Hill did pay extra, it negotiated a lower amount. Moreover, permitting such speculative damages appears inconsistent with the purpose of actual damages—to compensate the plaintiff for the fee he would have received absent the infringement (with a separate component of the infringer's profits attributable to the infringement). To the extent that GHPI seeks multipliers that only arose post-infringement in this case, giving effect to such a multiplier would appear to permit a deterrent or punitive component in an actual damages award or to permit the jury to award duplicative actual damages and infringer's profits.

However, GHPI takes issue with the characterization of the multiplier as punitive.  GHPI argues that the multiplier is not an impermissible penalty, relying on Semerdjian, a case involving a copyright infringement suit against a textbook publisher for overrunning a license to use reproductions of three paintings.  Semerdjian, 641 F. Supp. 2d at 237.  In Semerdjian, Ms. Wasco offered expert testimony on the issue of actual damages, and defendants moved prior to trial to exclude her testimony.  Id. at 238.  The court permitted Ms. Wasco's testimony as to two methods of calculating a reasonable license fee for the purpose of determining actual damages: (i) a print session method in which the number of printing sessions for the textbook was multiplied by 50 percent of the license fee plaintiff had charged for permitted use; and (ii) an extrapolation method in which the total number of textbooks printed was divided by the quantity of textbooks that defendants licensed and then multiplied by the license fee defendants had paid for the permitted uses.  Id. at 239-40.  In GHPI's view, the court thereby sanctioned approaches in which the original license fees were multiplied by a large factor.

But GHPI overlooks Ms. Wasco's third proposal, which plaintiff conceded was improper and the court did not approve—application of an *ex-post*, punitive multiplier to the original license fee to account for infringement.  Id. at 239 n.2.  Moreover, on close examination, the two approaches the court approved in Semerdjian did not involve multipliers.  The first approach applied a 50 percent discount to the license fee plaintiff had charged, and the second approach applied the license fee plaintiff had charged.  Id. at 239-40.  Both approaches are consistent with actual damages—attempting to compensate a plaintiff for the reasonable license fee to which the plaintiff would have been entitled absent infringement.

The cases from courts within the Second Circuit are, of course, not binding on the Court.  The Court must consider its obligation to uphold the jury's verdict if the evidence reasonably

supports it.  Moreover, the Third Circuit has cautioned that "'[g]rossly excessive is a hard thing to show." <u>Graham II</u>, 646 F.3d at 141.  In <u>Graham II</u>, defendants alleged that a copyright infringement damages award of more than $18.5 million was grossly excessive.  <u>Id.</u> at 141.  The Third Circuit affirmed the award, holding that to do otherwise would be to improperly substitute the court's view of the facts for the jury's.  <u>Id.</u> at 143.  <u>Graham II</u> is distinguishable from the instant matter, however, because it involved a request for remittitur and a discretionary review of the award.  <u>Id.</u> at 141.  Defendants did not allege that, as a matter of law, the damages award included elements that could not be included.  <u>Id.</u>  Instead, defendants' contention was that the evidence did not support such a large damages award.  <u>Id.</u>[4]

On balance, McGraw-Hill has the better legal argument.  Courts that have considered the same issue have not sanctioned multipliers in copyright infringement cases, and they have concluded that multipliers are not part of actual damages under the Copyright Act.  Accordingly, the Court must, as a matter of law, reduce the amount of damages awarded to GHPI to reflect the reasonable fair market value of the license fee to which GHPI would have been entitled.  However, that reasonable fair market value includes those additional amounts that the evidence at trial showed McGraw-Hill actually paid.  Counsel will be required to file briefs as to what the specific actual damages award should be based on the record and the parameters outlined by the Court.

---

[4] The Court is mindful that one could argue that its holding permits McGraw-Hill to escape the payment of an across-the-board multiplier despite the jury's finding of liability.  However, the rejoinders to this argument are (1) copyright owners should register their copyright to be eligible for statutory damages; (2) copyright owners are entitled to infringer's profits in addition to actual damages; and (3) it is up to Congress to amend § 504(b) if it objects to such an outcome.

## V. GHPI's Motion for Infringer's Profits

GHPI has moved under Fed. R. Civ. P. 50(b) for judgment as a matter of law on infringer's profits. The jury awarded GHPI $28,477 in McGraw-Hill's profits in the bellwether trial. GHPI contends it is entitled to McGraw-Hill's entire profit from the sale of the infringing products, however, because McGraw-Hill failed to meet its burden under 17 U.S.C. § 504 to prove any "elements of profit attributable to factors other than the copyrighted work." McGraw-Hill contends (1) GHPI's motion is untimely under Rule 50(b) and (2) GHPI has failed to submit evidence showing its entitlement to additional profits.

The Court concludes GHPI's motion is timely, but that GHPI has failed to prove it is entitled to additional infringer's profits as a matter of law. Accordingly, GHPI's motion will be denied.

### A.    Timeliness

Rule 50(b) requires a party to file a renewed motion for judgment as a matter of law "[n]o later than 28 days after the entry of judgment." Fed. R. Civ. P. 50(b). Under Fed. R. Civ. P. 6(b)(2), a court is barred from enlarging this period. See Long v. Atl. City Police Dept., 670 F.3d 436, 444 n.16 (3d Cir. 2012) (noting that Rule 6 explicitly instructs that time extensions for certain motions, including Rule 50(b) motions, are forbidden); Wall v. United States, 592 F.2d 154, 159 (3d Cir. 1979).

Judgment on the claims in the bellwether trial was entered on September 24, 2014. See ECF 180. GHPI filed its motion on November 4, 2014, or 41 days following the entry of judgment. Accordingly, McGraw-Hill contends GHPI's motion is untimely and the Court lacks authority to hear it.

The Court disagrees. The judgment entered in the bellwether trial is not a final judgment, as it only adjudicated a small portion of the claims between the parties in this case. Under Third Circuit precedent, because the judgment in the bellwether trial is not final, Rule 50(b)'s 28-day filing requirement does not apply. See O. Hommel Co. v. Ferro Corp., 659 F.2d 340, 353 (3d Cir. 1981) (holding that "judgment" under Rule 50(b) means "final judgment"), cert. denied 455 U.S. 1017 (1982). Hommel involved the timeliness of a motion filed under an older version of Rule 50(b), which required a party to move for judgment notwithstanding the verdict within 10 days of the entry of judgment. Id. Defendant appealed the district court's finding that its motion, filed within 10 days of the district court's supplementary order setting attorneys' fees but more than 10 days after the jury verdict and entry of judgment, was untimely. Id. The Third Circuit reversed. Id. Construing "judgment" in Rule 50(b) to mean "final judgment," the Third Circuit concluded that under existing precedent the judgment was only final when attorneys' fees had been determined, so defendant's Rule 50(b) motion was timely. Id. at 354.

In this case, the judgment entered in the bellwether trial is not a final judgment. Accordingly, GHPI's motion is timely.

**B.     Analysis Regarding GHPI's Motion for Additional Infringer's Profits**

Under Rule 50, judgment as a matter of law may be granted post-trial if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Courts should grant such motions "sparingly." Pitts v. Delaware, 646 F.3d 151, 155 (3d Cir. 2011). When evaluating a Rule 50(b) motion for judgment as a matter of law, a court must consider the evidence "in the light most favorable to the non-movant and giving it the advantage of every fair and reasonable inference." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1166 (3d Cir. 1993).

Federal copyright law permits a copyright owner to recover actual damages and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). To establish the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

The Third Circuit has interpreted § 504(b) to require plaintiffs to show both defendants' gross revenues during the relevant period and "a causal nexus between the infringement and the profits sought." Graham II, 646 F.3d at 141.[5] This standard indicates, as the Court instructed the jury, that GHPI is entitled "only to the part of the defendants' profits due to the infringement." See ECF 234, Trial Tr. 176:16-18, Sept. 22, 2014; see also ConsulNet Computing, Inc. v. Moore, 631 F. Supp. 2d 614, 619-20 (E.D. Pa. 2008) ("A copyright owner is only permitted to recover 'profits of the infringer that are *attributable* to the infringement.'" (quoting 17 U.S.C. § 504(b)).

In this case, the Court notes that GHPI's photographs were very minor parts of very large textbooks consisting of hundreds of pages of text and many photographs. Assuming that GHPI met its burden of showing a causal nexus between McGraw-Hill's infringements and the profits sought, the burden shifts to McGraw-Hill to prove its deductible expenses and the apportionment of profits between infringement and other factors. GHPI contends McGraw-Hill failed to meet its burden because it presented no evidence as to what elements of profit were attributable to factors other than GHPI's copyrighted works. Because McGraw-Hill failed to meet its burden,

---

[5] GHPI argues that a "reasonable relationship," not a "causal nexus," is required between the infringement and the profits sought, relying on a Sixth Circuit case, Balsley v. LFP, Inc. 691 F.3d 747, 770 (6th Cir. 2012). Even though a "causal nexus" remains the standard in this Circuit, the difference between these terms is not apparent. See Graham I, 568 F.3d at 442-43 (using "causal nexus" and "reasonable relationship" interchangeably to refer to the connection between gross revenues and profits sought as part of plaintiff's burden of proof).

GHPI argues it is entitled to recover all of McGraw-Hill's profits from the sales of the infringing textbooks.

There are two major problems with GHPI's theory—(i) McGraw-Hill presented evidence relevant to apportionment of profits and (ii) a reasonable jury had a legally sufficient basis, based on the evidence presented, to decide whether to award infringer's profits and to determine the size of any such award.

Viewing the evidence in the light most favorable to McGraw-Hill as the non-moving party, McGraw-Hill presented evidence that no (or very minimal) profits from the sale of the infringing textbooks were attributable to GHPI's photographs. Michael Hackett, Managing Director for Life Sciences at McGraw-Hill's Higher Education Division, testified that the photo content of the textbooks had no impact on profitability and that customers paid little attention to the photos in the books. <u>See</u> ECF 205, Defs.' Br., Ex. 2, Trial Tr. 229:21-235:12, Sept. 19, 2014. Kimberly Gillert, a District Sales Manager of McGraw-Hill's School Group, testified that, to her knowledge, the GHPI photographs at issue caused no one to purchase the textbooks and that, in her 11 years' experience, interior photographs never caused a school system to buy a book. <u>Id.</u>, Trial Tr. 252:21-253:13; 255:20-256:15, Sept. 19, 2014. Although this is not the strongest evidence regarding profits—nor the specific apportionment of profits GHPI argues is required—it is at least some evidence as to how much of McGraw-Hill's profits resulted from GHPI's photographs. Accordingly, GHPI is incorrect that McGraw-Hill presented no evidence on this issue.

Second, in order to overturn the jury's verdict and grant GHPI's motion, Rule 50 requires the Court to find that a reasonable jury would not have had a legally sufficient evidentiary basis for its verdict. There is no basis to reach that conclusion here with regard to infringer's profits.

The jury was entitled to use its common sense in reviewing the many textbooks received into evidence in determining the amount of McGraw-Hill's profits from illegal use of GHPI's photographs, which were a relatively minor part of each textbook.

As McGraw-Hill points out, there is no precise way to determine how the jury reached its damage award to GHPI of $28,477 attributable to McGraw-Hill's profits. McGraw-Hill speculates that the jury may have found that (i) based on GHPI's evidence, GHPI had shown its photographs contributed minimally to McGraw-Hill's profits from the textbooks and the jury awarded GHPI a small amount of profits in proportion to that contribution; or (ii) based on McGraw-Hill's evidence, much of the profits were attributable to factors other than GHPI's photographs and the jury awarded GHPI a proportionate share of the profits generated by its photographs. It is also possible that the jury focused on the evidence presented by each side and their respective burdens of proof. The important point is that the jury had some evidentiary basis for deciding on the apportionment of profits. See, e.g., Balsley v. LFP, Inc., 691 F.3d 747, 770-71 (6th Cir. 2012) (concluding that the jury was entitled to reject defendant's theory that none of its profits were attributable to the infringing photograph and noting that the jury likely credited defendant's arguments in part because its award was lower than plaintiffs' profit calculations); Bonner v. Dawson, 404 F.3d 290, 295 (4th Cir. 2005) (denying plaintiff's Rule 50(b) motion for judgment as a matter of law on profits because a "reasonable trier of fact could have concluded that the basis of the profits that [defendants] obtained . . . was unrelated to the exterior design provided by [plaintiff]. . . ."); Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, 798 (8th Cir. 2003) ("The question of allocating an infringer's profits between the infringement and other factors, for which the defendant infringer carries the burden, is 'highly fact specific' . . . and

should have been left to the jury." (citations omitted)).  Accordingly GHPI's argument that this Court should alter the jury's verdict on infringer's profits is unpersuasive.

## VI. GHPI's Motion for a Permanent Injunction

GHPI has also moved for a permanent injunction that would prevent McGraw-Hill from continuing to infringe GHPI's copyrights and for impoundment of all infringing textbooks still in the possession of McGraw-Hill or its agents.

A district court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  To be eligible for permanent injunctive relief, GHPI must demonstrate (1) whether the moving party has shown actual success on the merits; (2) whether denial of injunctive relief will result in irreparable harm to the moving party; (3) whether granting of the permanent injunction will result in even greater harm to the defendant; and (4) whether the injunction serves the public interest.  Malibu Media, LLC v. Flanagan, No. 13-5890, 2014 WL 2957701, at *5 (E.D. Pa. July 1, 2014) (citing Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001)).  The decision whether to grant injunctive relief is discretionary, and the Supreme Court "has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-93 (2006) (citations omitted).

The Court will deny GHPI's motion.  First, this motion comes too early.  The bellwether trial has only adjudicated a small portion of GHPI's claims, and no final judgment has yet been entered in this case.  More importantly, the injunctive relief sought by GHPI is much too broad. GHPI's photographs make up only a small proportion of those used in McGraw-Hill's textbooks. Yet GHPI seeks an injunction that would bar McGraw-Hill from selling its remaining inventory

of textbooks that have already been printed and contain the infringing photographs. The Court believes granting such relief is not warranted because money damages are adequate to compensate GHPI for McGraw-Hill's infringement and it is not in the public interest to order the destruction or impoundment of textbooks that could benefit our nation's students.

However, the Court invites GHPI to submit a revised motion for a preliminary injunction dealing with McGraw-Hill's future use of GHPI's photographs in textbooks or other educational materials McGraw-Hill has not yet printed.

## VII. Conclusion

Mindful that these motions come after a bellwether trial, the Court believes the principles outlined in this Memorandum will assist the parties and the Court in determining the appropriate amounts of damages for the remaining claims in this case, permitting the Court to enter final judgment and allowing the parties, if they so choose, to appeal.

First, the Court will grant in part McGraw-Hill's motion for a constitutional reduction in the jury's actual damages award. Actual damages will be limited to the license fees agreed on by the parties, including any additional amounts actually paid by McGraw-Hill. However, the jury's award of a six-times multiplier is too speculative and likely includes elements that are not permissible in an actual damages award. Second, the Court will deny GHPI's motion for judgment as a matter of law on infringer's profits because the Court concludes that the jury had a sufficient evidentiary basis for its decision on that issue. Finally, the Court will deny GHPI's motion for a permanent injunction or impoundment as overly broad but will invite GHPI to submit a revised motion for a preliminary injunction as to McGraw-Hill's future use of GHPI's photographs.

An appropriate Order follows.