**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GRANT HEILMAN PHOTOGRAPHY, INC.       :       CIVIL ACTION

                v.       :       No. 12-2061

THE MCGRAW-HILL COMPANIES, et al.       :

**MEMORANDUM RE: PENDING MOTIONS AND
SCHEDULE FOR TRIAL**

**Michael M. Baylson, J.**                                              **February 19, 2016**

In this copyright infringement case, plaintiff's suit claims damages for over 2,000 separate instances of infringement, allegedly arising out of defendant's publication of photographs, for which plaintiff had licensing rights on behalf of various photographers, in defendant's textbooks, either in excess of the amount of reproductions authorized, or by geographical distribution broader than allowed by the license.   The Court held a jury trial in September 2014 which, by agreement of counsel, concerned only 53 claims selected by counsel (the "mini-trial" or "bellwether trial").   Following a jury verdict for plaintiff on September 24, 2014, a number of post-trial motions were filed.   Subsequently, the Court filed two extensive Memoranda on post-trial motions, the first on March 20, 2015, 2015 WL 1279502, and the second on June 30, 2015, 2015 WL 3970938.   These Memoranda explained the history of the case in some detail, the trial proceedings, and the Court's decisions on various motions resulting in a judgment entered in favor of plaintiff and against Defendant on August 20, 2015 in the amount of $64,634.00 (ECF 269).

Further, since the first trial, the Court has entered a number of orders, has held conferences with counsel, and has received proposals from counsel concerning the disposition of the remaining claims.   In view of plaintiff's jury trial demand, a jury will be empaneled on any disputed issues of

fact or amounts of damages, not precluded by operation of law.

As a result of these pretrial proceedings, it now appears that plaintiff is seeking damages for approximately 1,722 separate claims.   Defendant has acknowledged liability for all but 130 of these claims.

The parties disagree whether there are disputed facts as to these 130 claims and whether the Court can decide if plaintiff is liable for these as a matter of law.   The schedule for presentation of this issue is set forth below.

The major issue for trial is how to proceed with regard to plaintiff's claims for damages, which defendant does dispute.

The Court will first decide certain pretrial motions that are still pending.   The Court notes delay in the disposition of these motions from when they were filed, in part due to counsel agreeing upon numerous extensions of time to file various pretrial statements (possibly because counsel were considering a settlement).   The final pretrial statement, which the Court required, was filed on February 1, 2016.

The Court is not ruling on the pending motions for costs or attorneys' fees at this time.

I.      **Defendant's Motion for Partial Summary Judgment on the Issue of Statutory Damages**

At the first trial, at the conclusion of plaintiff's evidence, upon motion by defendant for a directed verdict as to statutory damages, the Court granted the motion and ruled that defendant was not liable for statutory damages.   Following the first trial, plaintiff has made clear that it believes the Court's ruling was in error and has proposed that certain of the remaining claims are eligible for statutory damages.   Defendant's motion for partial summary judgment on this issue (ECF 276), has been fully briefed, and the Court has reviewed plaintiff's response (ECF 278), and defendant's reply brief (ECF 280).   Furthermore, plaintiff has presented further arguments in a letter to the Court on this issue, dated February 15, 2016 in which plaintiff argued that additional issues have been raised by defendant's reply brief.   After careful review of the papers, the Court concludes that its original ruling dismissing plaintiff's claims for statutory damages at the first trial was correct.   Defendant's motion papers accurately describes circumstances as to each of the claims for which plaintiff now seeks statutory damages.   Defendant accurately states the two legal issues in its reply brief as follows:

> (1) whether all six of the remaining photos are ineligible for statutory damages because the registration on which GHPI relies (the "'791 Registration") is for a collective work, and McGraw-Hill infringed other photos in the same collective work prior to that registration; and (2) whether two of the six photos are ineligible for the additional reason that McGraw-Hill infringed them in different textbooks prior to registration.

The Court concludes defendant has established, as a matter of law, that plaintiff is not entitled to statutory damages.   In view of the Court's prior ruling, the Court will briefly discuss the issue.   Defendant persuasively contends that Section 504(c)(1) of the Copyright Act imposes a

special limitation on the recovery of statutory damages in connection with compilations, stating that "all the parts of a compilation or derivative work constitute one work."   17 U.S.C. § 504(c)(1).   This rule applies for purposes of statutory damages even though the constituent parts "are regarded as independent works for other purposes."   H.R. Rep. No. 94-1476, at 162 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5778.   The Court also concludes the "independent economic value" test advocated by GHPI is contrary to the plain language of the Copyright Act. Defendant points out that plaintiff could have registered its photographs at a much earlier time than it did.   The Court agrees with defendant that the undisputed evidence demonstrates that McGraw-Hill's prior infringement of the photos appearing in rows 1142 and 2149 of Exhibit A to the Complaint occurred before the effective date of the '791 Registration and renders those photos ineligible for statutory damages.

**II.**     <u>**Motion to Compel Discovery**</u>

Plaintiff filed a motion to compel discovery (ECF 202) which has also been fully briefed. Plaintiff makes clear that one of the reasons it seeks this additional discovery relates to proving willfulness.   "Willfulness" may have been relevant on plaintiff's claim for statutory damages, which the Court has dismissed.   Plaintiff alleges it should be to prove willfulness as to its other claims, but the Court is doubtful of this argument, but will await briefs.   The plaintiff also asserts that some of the discovery it seeks is appropriate because it is "reasonably calculated" to lead to the discovery of admissible evidence.   The Court notes that the "reasonably calculated" justification for discovery no longer exists in Rule 26, by virtue of amendments which became effective as of December 1, 2015.   Furthermore, the requested discovery would interrupt the parties' preparation for the trial, and the Court does not think the discovery requested would result in any material or meaningful evidence that would warrant a jury adding or reducing the amount of damages to which plaintiff is entitled.

**III.**     <u>**Motion to Amend the Complaint**</u>

Plaintiff seeks to amend the complaint (ECF 212) because it inadvertently omitted certain claims that are directly related to the claims in suit.   Plaintiff admits that of these approximately 300 claims, only 199 are actually related to the claims in suit (ECF 228, p. 4) and the Court GRANTS plaintiff's motion in part, to amend its complaint to include these in the trial.   However, the Court does not see a need for a complete amended complaint, but will allow plaintiff to file a single paragraph   entitled, "Amendment to the Complaint" adding these invoices in sufficient detail so defendant is aware of the relevant facts and can prepare for defense.   Plaintiff must supply additional facts if requested by defendant.   The Court directs that any dispute on liability as to these claims must be included in the overall pretrial papers discussed below, and added to the damages computation.

The Court is making this ruling despite the late nature of the amendment, to avoid the necessity of a separate lawsuit.

**IV.**   **Motion for Pre-Judgment and Post-Judgment Interest (ECF 201)**

The Court will GRANT this motion, in part.   The Court will use certain dates and amounts set by the jury in its verdict dated September 24, 2014 in making allocations, but the amount of interest must be based on the final judgment entered August 20, 2015.

In this case, the damages were divided into two time periods.   The first time period was up until April 18, 2009, which the Court will refer to as the "belated claims."   The second period is from April 18, 2009 forward to the date of verdict of September 24, 2014 which the Court will refer to the "timely claims."   The allocation of percentages is 61% for the belated claims and 39% for the timely claims.

A further allocation is required because of the different amounts awarded for "actual damages" and for "lost profits."   The allocation of damages between these two numbers, based on the verdict of September 24, 2014, is 44% for lost profits, and 56% for actual damages.

As to pre-judgment interest, the Court disagrees with defendant that the plaintiff's claims were filed too late, because there was no, and still is no, final judgment in this case.   The practice in this District is for interest to be added in connection with issuance of a final Judgment.   The Court is of the view that pre-judgment interest is essentially an equitable remedy, and finds that it should be awarded in this case, because the defendant has admitted liability for almost all of the infringements in this case and therefore had the improper use of money that belonged to the plaintiff for a substantial period of time.

The parties disagree about the percentage of interest that should be awarded for pre-judgment interest, i.e., interest up until the date of the verdict of September 24, 2014.   The Court takes judicial notice that interest rates for much of this period were at a historically low rate.

7

The defendant is urging that a 52 week Treasury bill rate be used for pre-judgment interest.   The Court agrees with plaintiff that plaintiff could not have borrowed money at this rate, and will, with some desire to simplify the calculation of interest in this case, but remembering that the award of pre-judgment interest is primarily equitable, allow plaintiff a rate that is double the 52 week Treasury bill rate, as applied to the rate as it existed on January 1st for each year beginning January 1, 2005.   The Court picks this date because it is midway between infringements proven by plaintiff which date back to 2000, and the end date for the belated claims as of April 2009.   The plaintiff submitted an affidavit by an accountant who went through the following steps in determining interest:

1.   Calculated prejudgment interest for 53 infringements using Pa. statutory rate of 6%, compounded annually

2.   Calculated Defendant's revenues received from sales of 11 infringing textbooks during each year in which it infringed Plaintiff's photos, from 2000 to 2013

3.   Added these revenues to find total revenues received from infringing products

4.   Divided each year's revenues by total revenue sum to determine % of the total revenues that Defendant received in each year from sales of infringing textbooks

5.   Applied that % to jury's damages award to arrive at allocation of jury award for each year of infringement

6.   Applied 6% statutory interest rate to each year's allocated portion of the judgment, and then compounded that amount once per year to date of judgment

The Court will allow plaintiff to use this approach in calculating pre-judgment interest with the above allocations and the above principles, but plaintiff may opt for a more simplified approach, following this Court's decision on the dates and the rate.

As to post-judgment interest, which would apply for interest running after the date of the verdict of September 24, 2014, plaintiff should use the allocation between actual damages and lost

profits based on the Court's reduction of the amount of actual damages as reflected in the judgment entered on August 20, 2015, although there is no need for an allocation between timely claims and belated claims as to the calculation of post-judgment interest.

The Court also concludes that the rate for post-judgment interest has been established by statute which must be followed.

As to the procedure, plaintiff shall prepare damage calculations consistent with this memorandum and forward them to defendant within fourteen (14) days.   Fourteen (14) days after that, defendant shall respond to plaintiff.   Counsel shall discuss and attempt to resolve any disputes   Within thirty-five (35) days (or sooner, if possible), the parties shall file a joint stipulation as to the amount of interest, or separate statements showing their calculations and reasons for their position.

**V.**     **Issues Pertaining to the Upcoming Trial**

In plaintiff's projections for the upcoming trial, plaintiff has suggested a multiplier of 2.2 for all of the "actual damages" to which it is entitled based on the license fees.   The defendant disputes the appropriateness of this multiplier.   The Court will require briefing of the parties on this issue.

As noted above, it is likely that the only issue in the upcoming trial will be the amount of damages to which plaintiff is entitled, to be determined by a jury.   As the prior decisions of the Court recognize, plaintiff's damages are divided into two categories, "actual damages" and "lost profits."

**A.**     **Actual Damages**

As to the "actual damages," the Court will adhere to its prior rulings that plaintiff's request for damages is limited to the actual amount of the license fee, unless there is some specific contractual agreement allowing more damages, which must be documented as to any specific invoice for which plaintiff claims additional damages above the license fee.   This amount of "actual damages" must be appropriately presented in cogent and understandable summary fashion, by chart or other simplified document, understandable by the jury.   Subject to any disputes about calculations, the Court may find, based on the jury's prior verdict, that the plaintiff is so entitled this amount because defendant may be precluded from disputing it.

**B.**     **Effect of the First Trial Verdict**

The parties dispute the nature of the first trial.   The plaintiff denies the first trial was a "bellwether" trial and asserts that it was merely a "mini-trial" where the parties selected 53 invoices so as to get a "test verdict" from the jury which might be useful for strategy or settlement

10

purposes or for narrowing issues, but has no preclusive effect.

The defendant has made certain suggestions as to how the Court should treat the results of the first trial in rulings which apply to the second trial.

Prior to the first trial, the Court issued a pretrial order dated August 6, 2014 which referred to "the upcoming bellwether trial" (ECF 140).   Although plaintiff moved to reconsider this order (ECF 145), plaintiff did not, in that motion for reconsideration, make any complaints about the Court's reference to the upcoming trial as a "bellwether trial."

The pretrial proceedings in this case justify the Court in considering the first trial to have been a bellwether trial, where the jury verdict is entitled to have some resonance and legal impact on the second trial.   Many of the cases which plaintiff has previously cited on this point relate to cases in which a court considered whether a verdict as to certain parties could apply to a case with different parties.   Those decisions do not govern this case.

In this case, the parties are the same and the issues are the same:   There is substantial precedent that will allow, if not require, the Court to apply the results of the first trial in the second trial.   The issue is how to accomplish this, fairly to both sides.

Plaintiff is correct that the Court did not in any pretrial order specifically say that the bellwether trial would have any preclusive effect.   The Court will not necessarily rely on any concepts unique to bellwether trials in determining what preclusive effect the prior trial would have, but at the same time does not agree with plaintiff that merely because an order was not entered specifically noting preclusive effect, that the first trial cannot have preclusive effect.   The Court may rely on doctrines of "collateral estoppel" and "law of the case," both of which the Third Circuit has held are appropriate in applying the findings of a jury or rulings by the Court in

11

subsequent proceedings.

C.     **Lost Profits**

The upcoming trial will most likely be principally, if not exclusively, limited to the issues of "lost profits."   The Court notes that the verdict of the jury on lost profits for claims for both belated and timely claims was a small fraction of the damages that plaintiff actually sought.

In its pretrial papers, its presentation of evidence at the first trial, and in arguments to the jury, the plaintiff was basically asserting that it was entitled to receive the entirety of defendant's gross receipts, because the defendant had failed to properly prove any deductions as allowed by law.

As discussed in prior papers, the copyright laws and relevant decisions require the plaintiff to prove the gross receipts that defendant received from the publishing of the infringed material. The defendant then has the burden of proving two types of deductions from the gross receipts. First, the expenses relating to the production of the infringing textbooks and secondly, the contents of the published textbooks that were not related to the infringing photographs.

At the first trial, and in subsequent pleadings, the plaintiff continues to assert that defendant has failed to produce adequate proof to show what its expenses were.   The Court ruled adversely to plaintiff on this issue at the first trial and charged the jury under appropriate law. Plaintiff continues to assert the Court erred, but the Court plans to continue with the same rulings and the same instruction at the upcoming trial unless plaintiff comes forward with new authority showing the Court erred.

As to the other issue, whether the textbooks published by defendant had material other than the infringing photographs, which would warrant a reduction in the gross receipts to arrive at a

12

verdict on net profits awardable to the plaintiff, plaintiff's arguments basically ignore the nature of the infringements in this case and the evidence at trial.   It is undisputed from the overall trial record that the defendant published high school/college textbooks on science topics such as Biology, Chemistry, etc. which contain large amounts of texts, graphs, charts, maps, plus photographs from various sources, including but not limited to photographs licensed by plaintiffs. The Court notes that these textbooks were all introduced into evidence and the jury had the textbooks with them in the jury room during the jury's deliberations.   From the Court's personal observation of the contents of these textbooks at the trial, the photographs in these textbooks, which plaintiff claims the jury found were infringing, were a tiny percentage of the overall contents of all textbooks.   The plaintiff has argued that the defendant failed to prove this element of reduction from gross receipts.   The Court disagrees.   These textbooks were, without objection, introduced into evidence and the jury was free to, and most likely did, examine the textbooks in the jury room.   Defendant argued a large deduction was warranted.   The jury made significant deductions from defendant's gross receipts that plaintiff presented, to arrive at a much lower lost profits award.

In the upcoming filings on the effect of the first trial on the second trial, the parties are directed to specifically address this issue.   Neither party requested, and the Court did not require, the jury to detail or document why it made the deductions it did, or to divide them up between categories of expenses and non-infringed material.   However, the Court is of the view that it can either make a ruling of preclusion, or it can instruct the jury in the upcoming case as to the decision of the jury in the prior case, or the Court can give plaintiff full latitude and then rule on this issue in post-trial motions.   The parties will brief this issue.